*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Jamal X. WASHINGTON, First Lieutenant
United States Air Force, Appellant

**No. 25-0044**
Crim. App. No. 39761

November 18, 2025—April 13, 2026

Military Judge: Christopher M. Schumann

For Appellant: *Robert Feldmeier*, Esq. (argued); *Captain Trevor N. Ward* (on brief).

For Appellee: *Major Vanessa Bairos* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel Jenny A. Liabenow*, and *Mary Ellen Payne*, Esq. (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge HARDY joined. Judge MAGGS filed a dissenting opinion.

————————

Judge JOHNSON delivered the opinion of the Court.

Appellant was charged with one specification of abusive sexual contact in violation of Article 120(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(d) (2012), among other offenses. During trial, the military judge concluded that portions of Appellant's direct examination testimony implicated the prohibition against "other sexual behavior" under Military Rule of Evidence (M.R.E.) 412(a)(1) (2019 ed.)[1] and "sexual predisposition" under M.R.E. 412(a)(2). We granted review to determine whether the military judge abused his discretion by striking those portions of Appellant's testimony. *United States v. Washington*, 85 M.J. 408, 409 (C.A.A.F. 2025) (order granting review). We hold that the military judge abused his discretion because Appellant's testimony described surrounding circumstances that were inextricably intertwined with the charged offense and a conversation that did not implicate the victim's sexual predisposition. Therefore, this evidence was outside the scope of M.R.E. 412. Moreover, the military judge's instruction directing the panel to disregard Appellant's testimony about those surrounding circumstances as well as any testimony from Appellant that made any suggestion or reference to the victim's sexual orientation constituted an extraordinary remedy outside the range of reasonable choices supported by the facts or law. Accordingly, we reverse the decision of the United States Air Force Court of Criminal Appeals (AFCCA) as to Charge I and its specification.

## I. Background

In February 2018, authorities began investigating Appellant for conduct that occurred during a temporary duty assignment to Camp Gurnsey, Wyoming. As part of the investigation, authorities interviewed CP, a company grade officer who was shadowing Appellant at the time. CP

---

[1] Unless otherwise noted, all references in this opinion to the Rules for Courts-Martial (R.C.M.) and Military Rules of Evidence (M.R.E.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

informed authorities that after a night of drinking, he went to Appellant's hotel room where Appellant kissed him and grabbed his genitals twice without CP's consent. As a result, Appellant was charged with one specification of abusive sexual contact under Article 120(d), UCMJ.

Prior to trial, the defense moved to admit CP's statement to Appellant, made in the hotel room, disclosing CP's prior homosexual experiences. The defense had no plan to explore CP's prior homosexual experiences but argued that if the Government were to suggest that CP's heterosexuality precluded him from engaging in consensual homosexual acts, that would "open the door" to an evidentiary hearing on the matter. The military judge agreed and instructed the parties to request an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2018), session if any such evidence potentially implicating M.R.E. 412 arose.

Testifying for the Government, CP said that Appellant kissed him on the hotel room bed, and then reached down his pants and touched CP's penis. CP told Appellant, "[S]orry. I'm not into you. I'm not into that or anything like that." Appellant responded with something to the effect of, "[Y]ou have a girlfriend. I have a girlfriend. It doesn't matter. . . . [l]et me suck you off," as he kissed CP and put his hand down CP's pants again. The defense did not object under M.R.E. 412 to CP's testimony.

During the defense's case, Appellant testified that he and CP had a "lasting" hug as they sat at the foot of the bed talking. They laid down and began discussing their dating lives. According to Appellant, the conversation was about "who we're dating at the time. And then, he mentions that he has a girlfriend and so do I." Appellant then reached over and touched CP's thigh, which Appellant felt was a natural next step in their consensual, sexualized interaction. Appellant began to testify, "At that time we're talking about different preferences. He relates to me that he and his girlfriend—" when defense counsel interjected, instructing Appellant not to "get into details of what's going on in the details of [CP's] personal life." Appellant testified that CP said "he had had men and women come

on to him before." CP's Special Victims' Counsel (SVC) objected pursuant to M.R.E. 412, but withdrew the objection after assurances the defense did not intend to introduce M.R.E. 412 evidence. The Government did not object.

Resuming direct examination, defense counsel instructed Appellant not to repeat specific words from his conversation with CP. Appellant testified that after a while, CP objected to Appellant touching his thigh. Appellant stopped touching him and they continued talking for some time before CP eventually left the room. Appellant denied ever touching CP's genitals. At the conclusion of Appellant's direct examination, the SVC requested a closed session as a precaution to discuss what the Government intended to ask Appellant during cross-examination.

At the start of the closed hearing, the military judge expressed concern that Appellant's testimony about the events leading up to the charged conduct—consensual hugging, lying down together, touching CP's thigh, and CP's objection to the touching of his thigh (hereinafter, the "uncharged conduct")—described "matters that are clearly covered under M.R.E. 412" but had not been noticed by the defense. The defense countered that the uncharged conduct was not past sexual behavior or predisposition, but rather res gestae of the offense, offered to show that Appellant and CP "may have engaged in some behavior with each other in a generally consensual manner." The Government explained that it sought to cross-examine Appellant about what CP said that made Appellant believe CP was consenting, "[t]he idea being that what [CP] told [Appellant] is offered by the prosecution to explain the facts and circumstances of the offense, or as his testimony kind of unfolded, the lack of an offense." Later, the Government added that it would offer Appellant's testimony "that CP relayed to him a sexual discussion between him and his girlfriend. . . . to prove that [Appellant] was told of a sexual discussion and . . . that is sexual behavior, period dot."

The military judge concluded that Appellant's testimony created a "[c]lear implication . . . that the encounter with [CP], including any sexualized nature of that encounter, was consensual which implicated [CP]'s sexual orientation." According to the military judge, the uncharged conduct—"what the defense . . . described as facts and circumstances surrounding the charged offense"—was other "sexualized conduct" evidence. Alternatively, Appellant's testimony that they talked about girlfriends, sexual preferences, and CP's claim that men and women had come on to him amounted to sexual predisposition evidence because it implied CP consented to the uncharged conduct, which in turn implied he may be homosexual. As such, this evidence should have been noticed and addressed in an M.R.E. 412 setting.

To give the Government the opportunity to challenge Appellant's testimony that the uncharged conduct was consensual, the military judge gave the defense two options: (1) Appellant could submit to cross-examination in a closed session in accordance with M.R.E. 412, or (2) the military judge would instruct the members to disregard Appellant's testimony regarding the uncharged conduct as well as any testimony from Appellant "that made any suggestion or reference to [CP]'s sexual orientation."

Appellant refused to testify in a closed hearing. Accordingly, the military judge instructed the panel to disregard Appellant's testimony that he believed the uncharged conduct "was consensual in nature and may have implicated [CP]'s sexual orientation." The military judge stated that the panel must, however, consider aspects of the testimony wherein Appellant denied the specific charged conduct. Two members of the panel had questions following the military judge's instructions. One member asked the military judge to repeat the instruction and then asked for time to review his notes. Another member asked in part whether they were "supposed to disregard that it was consensual or just disregard the portion of sexual orientation?" The military judge responded, "Both."

5

Prior to the close of evidence, the defense moved to strike CP's testimony that he told Appellant he was "not into things like that," implying "a heterosexual sexual orientation." The defense argued that the Government failed to provide M.R.E. 412 notice of the statement and kissing to which CP testified. While the defense viewed this evidence as res gestae of the charged conduct, the military judge had ruled otherwise with respect to Appellant's testimony about the uncharged conduct and CP's statements to Appellant during the charged conduct. Therefore, the defense argued Appellant was entitled to the same remedy the military judge provided to the Government after concluding that Appellant's testimony was M.R.E. 412 evidence. The military judge denied the motion.

The members found Appellant guilty, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120(d), UCMJ, as well as one specification of conduct unbecoming an officer in violation of Article 133, UCMJ, 10 U.S.C. § 933 (2012), and five specifications of fraternization in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012), for conduct irrelevant to the instant appeal. The military judge sentenced Appellant to dismissal from the service.

In an unpublished opinion, with each of the three judges writing separately, the AFCCA affirmed the findings of guilty for abusive sexual contact and conduct unbecoming an officer. *United States v. Washington*, No. ACM 39761, 2021 CCA LEXIS 379, at *2-3, 2021 WL 3239903, at *1 (A.F. Ct. Crim. App. July 30, 2021) (unpublished).[2] We granted review of the following issue:

---

[2] The AFCCA dismissed the five Article 134, UCMJ, fraternization specifications, four of which with prejudice, set aside the sentence, and authorized a rehearing as to one of the fraternization specifications and the sentence. *Washington*, 2021 CCA LEXIS 379, at *2-3, 2021 WL 3239903 at *1. Appellant petitioned this Court for a grant of review which was "denied without prejudice to Appellant's right to raise the matters asserted during the normal course of appellate review." *United*

Whether the original military judge abused his discretion when he struck a portion of Appellant's testimony.

*Washington*, 85 M.J. at 409. For the following reasons, we answer the granted issue in the affirmative. Therefore, we reverse the decision of the AFCCA as to Charge I and its specification and set aside the guilty finding as to Charge I and its specification and the sentence.

## II. Standard of Review

We review a military judge's decision to admit evidence pursuant to M.R.E. 412 for an abuse of discretion. *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024). "Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable." *Id.* While a military judge's findings of fact are reviewed for clear error, the threshold question of whether evidence falls within the scope of M.R.E. 412 is "one of law, reviewed *de novo.*" *United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010).

---

*States v. Washington*, 82 M.J. 30 (C.A.A.F. 2021) (order). The convening authority determined a rehearing on the fraternization specification was impractical and dismissed the specification. *United States v. Washington*, No. ACM 39761, 2024 CCA LEXIS 342, at *3, 2024 WL 3886239, at *2 (A.F. Ct. Crim. App. Aug. 20, 2024) (unpublished). The convening authority ordered a sentencing rehearing for the Article 120, UCMJ, and Article 133, UCMJ, violations. *Id.*, 2024 WL 3886239, at *2. At the rehearing, Appellant was sentenced to nine months of confinement, forfeiture of all pay and allowances, and a reprimand. *Id.*, 2024 WL 3886239, at *2. Following writ petitions that were denied by both the AFCCA and this Court, the AFCCA considered nine issues. *Id.* at *4-5, 2024 WL 3886239, at *2. Finding multiple prejudicial errors, the AFCCA reassessed the sentence, declining to affirm the confinement or reprimand. *Id.* at *85, 2024 WL 3886239, at *31. This Court then granted review. *Washington*, 85 M.J. at 409.

### III. Applicable Law

Pursuant to the Privacy Protection for Rape Victims Act,[3] the Federal Rules of Evidence were amended in 1978 to include Fed. R. Evid. 412, which generally bars admission of evidence of a victim's other sexual behavior or sexual predisposition in cases involving sexual misconduct except under limited circumstances. *See United States v. Miller*, 86 M.J. 188, 191 (C.A.A.F. 2025). In creating the rule, Congress sought to protect victims of sexual misconduct from being discredited based on unrelated sexual acts or behavior.[4] Fed. R. Evid. 412's military counterpart, M.R.E. 412, incorporated the same principles into court-martial procedures. *Miller*, 86 M.J. at 191.

M.R.E. 412(a) provides that evidence of a victim's other sexual behavior or sexual predisposition is generally inadmissible in a proceeding involving an alleged sexual offense. The rule outlines three exceptions where such evidence may be admitted, including evidence of specific instances of sexual behavior by the victim (1) to prove someone other than the accused was the source of injury or other physical evidence, (2) to prove consent, and (3) evidence the exclusion of which would violate the accused's constitutional rights. M.R.E. 412(b)(1); *Miller*, 86 M.J. at 191. The rule prescribes procedures for admitting evidence pursuant to one of the exceptions. M.R.E. 412(c)(1)-(3). Notably, a military judge must conduct a closed hearing pursuant to Article 39(a), UCMJ, to determine whether the proffered evidence should be admitted under the relevant exception. M.R.E. 412(c)(2). If the military judge determines that the evidence falls

---

[3] Pub. L. No. 95-540, § 1, 92 Stat. 2046, 2046-47 (1978).

[4] *United States v. Savala*, 70 M.J. 70, 72 (C.A.A.F. 2011); *United States v. Roberts*, 69 M.J. 23, 24 (C.A.A.F. 2010); Privacy of Rape Victims: Hearings on H.R. 14666 and Other Bills to Amend the Federal Rules of Evidence to Provide for the Protection of the Privacy of Rape Victims Before the Subcomm. on Crim. Just. of the H. Comm. on the Judiciary, 94th Cong. 2 (1976) (statement of Rep. Elizabeth Holtzman, Member, H. Subcomm. on Crim. Just.).

within one of the exceptions and the probative value of the evidence outweighs its prejudicial effect, then the evidence may be admitted. M.R.E. 412(c)(3). This balancing test does not apply to evidence that is admissible under the rule's constitutional exception. *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011).

## IV. Discussion

Over the defense's objection, the military judge ordered a closed M.R.E. 412 hearing and subsequently instructed the panel to disregard a substantial portion of Appellant's testimony because he refused to submit to cross-examination outside the presence of the members. The military judge relied on a determination that those portions of Appellant's testimony fell squarely within the plain language of M.R.E. 412. We conclude that the military judge applied an erroneous view of M.R.E. 412 as to both the uncharged conduct evidence and Appellant's testimony about CP's statements. Therefore, we hold that the military judge abused his discretion. Further, the military judge's remedy of striking Appellant's testimony violated Appellant's Sixth Amendment right to testify in his own defense and the Government has failed to show such error was harmless beyond a reasonable doubt.

### A. The uncharged conduct was not "other sexual behavior"

Appellant's testimony concerning the uncharged conduct—consensual hugging, lying down together, touching CP's thigh, and CP's objection to the touching of his thigh—did not constitute evidence of "other sexual behavior" because it described surrounding circumstances that were intrinsic to, not separate from, the charged conduct. Therefore, this evidence was not barred under M.R.E. 412 and the military judge erred in instructing the panel to disregard Appellant's testimony about the uncharged conduct.

M.R.E. 412(a)(1) provides that evidence offered to prove a victim's "other sexual behavior" is generally inadmissible in any proceeding involving alleged sexual offenses. Other

sexual behavior "includes any sexual behavior, not encompassed by the alleged offense." M.R.E. 412(d).

The Advisory Committee Note to Fed. R. Evid. 412, on which M.R.E. 412 was modeled, explains that "[t]he word 'other' is used to suggest some flexibility in admitting evidence 'intrinsic' to the alleged sexual misconduct." Fed. R. Evid. 412, Advisory Committee Note (1994) (citing Advisory Committee Note to 1991 amendment to Fed. R. Evid. 404(b)). An act is intrinsic to the charged conduct when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (internal quotation marks omitted) (citation omitted); *see also United States v. Ingram*, 556 F. App'x 203, 210 (4th Cir. 2014) (per curiam) (unpublished). "If the evidence is intrinsic, it is not *other* bad acts evidence at all, but rather additional facts surrounding the charge at issue." *United States v. Lockhart*, 844 F.3d 501, 512 (5th Cir. 2016). This is because those acts "are part of a single criminal episode." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

Fed. R. Evid. 412 is consistent with Fed. R. Evid. 404(b), the rule regulating the admissibility of character evidence and other crimes or wrongful acts, in treating intrinsic evidence "as part and parcel of the charged offense." *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). This Court has similarly found evidence of conduct intrinsic to the charged conduct to be admissible under M.R.E. 404. *See United States v. Peel*, 29 M.J. 235, 239 (C.M.A. 1989) (concluding that evidence the appellant threw coins at the victim before the charged assault "was probably admissible [under M.R.E. 403 and M.R.E. 404] as 'part of the same transaction as the' assault," but even if error it was harmless); *United States v. Thomas*, 11 M.J. 388, 392-93 (C.M.A. 1981) (recognizing a distinction between admissible "uncharged misconduct which is inextricably related in time and place to the offenses charged and

uncharged misconduct which lacks this nexus" and may be inadmissible under M.R.E. 404(b)).

Just as intrinsic conduct is not "other" conduct subject to exclusion under M.R.E. 404(b), conduct that is intrinsic to the charged conduct is not "other sexual behavior" subject to exclusion under M.R.E. 412. Thus, the service courts have held that conduct which is "inexorably intertwined with the alleged offense" is not inadmissible "other sexual behavior" under M.R.E. 412. *United States v. Gaddy*, No. ARMY 20150227, 2017 CCA LEXIS 179, at *4-5, 2017 WL 1097058, at *2 (A. Ct. Crim. App. Mar. 20, 2017) (unpublished) (holding that "highly sexualized dancing" *"immediately preceding the alleged assault. . . .* was admissible as part of the same transaction as the assault" (internal quotation marks omitted) (citation omitted)); *United States v. Key*, 71 M.J. 566, 569 (N-M. Ct. Crim. App. 2012) (concluding that words spoken by a victim "shortly before" an assault were "encompassed by several of the alleged offenses" and thus, not barred by M.R.E. 412).

The uncharged conduct to which Appellant testified in this case was intrinsic to the charged conduct and not "other sexual behavior" prohibited by M.R.E. 412. Although Appellant denied touching CP's penis, he described an escalating, consensual, intimate interaction with CP that culminated in the charged conduct. Appellant's testimony regarding an extended hug, and lying on the bed with CP, his hand on CP's thigh, as they talked about girlfriends, sexual preferences, and sexual experiences, provided context for CP's allegation that Appellant touched his penis without consent. As such, the uncharged conduct was both "necessary to complete the story" of the hotel room encounter and "inextricably intertwined with the evidence regarding the charged offense" of touching CP's penis. *Edouard*, 485 F.3d at 1344 (internal quotation marks omitted) (citation omitted).

The Government's argument to the contrary is not persuasive. The Government argues the "allegedly consensual hug, thigh touch, and lying on the bed were not

encompassed by the offense described on the charge sheet: touching CP's genitals." The Government's narrow view of the scope of the offense is inconsistent with Article 120(g)(8)(C), UCMJ, 10 U.S.C. § 920(g)(8)(C) (2012),[5] which provides that "[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent." *See, e.g.*, *United States v. Casillas*, 86 M.J. 94, 101 (C.A.A.F. 2025) (holding that the military judge properly declined to give an instruction prohibiting the panel members from considering all of the surrounding circumstances to determine consent). Alleged consensual touching that is intrinsic to the charged conduct is precisely the "surrounding circumstances" that must be considered in determining whether a person gave consent. *United States v. Mendoza*, 85 M.J. 213, 222 (C.A.A.F. 2024).

### B. Appellant's testimony was not "sexual predisposition" evidence

Evidence offered to prove a victim's "sexual predisposition" is generally inadmissible. M.R.E. 412(a)(2). "Sexual predisposition" is defined as a "victim's mode of dress, speech, or lifestyle that does not directly refer to sexual activities or thoughts but that may have a sexual connotation for the fact finder." M.R.E. 412(d).

Appellant testified that on the night in question, immediately prior to the charged conduct, he and CP discussed CP's relationship with his girlfriend and CP told him that both men and women had flirted with CP before. For the reasons stated below, we conclude that neither of these statements qualifies as sexual predisposition evidence.

First, the parties agreed that the fact CP was in a relationship was not covered by M.R.E. 412, and the military judge had previously ruled that evidence of the

---

[5] The Military Justice Act of 2016 renumbered this provision without changing the language. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5430(a), (b), 130 Stat. 2000, 2949 (2016). It is now codified at Article 120(g)(7), UCMJ, 10 U.S.C. § 920(g)(7) (2024).

existence of the relationship was permissible. "Evidence of a relationship, even a romantic or dating relationship, absent more is insufficient to create a reasonable inference of either sexual behavior or sexual predisposition that would trigger Mil. R. Evid. 412's exclusions." *United States v. Alston*, 75 M.J. 875, 883 (A. Ct. Crim. App. 2016). Here, during its case-in-chief and without objection, the Government introduced evidence that CP was in a relationship during the charged time frame through the testimony of CP's then girlfriend before Appellant testified for the defense. Therefore, this evidence was properly before the factfinder. Moreover, when Appellant began to describe what CP said about his girlfriend and "preferences," defense counsel cut his testimony short.[6] As a result, there is no evidence, sexualized or other, about the relationship, or CP's preferences, because Appellant did not testify to the content of the conversation. Accordingly, even if the existence of a relationship might otherwise relate to a victim's lifestyle, Appellant's limited testimony is not evidence of sexual predisposition because Appellant did not testify to CP's preferences beyond acknowledging the relationship's existence.

Second, CP's statement that men and women have flirted with him in the past does not describe anything he said or did. It describes actions that others took toward him. It does not shed light on CP's sexual orientation because it does not signify anything about his "mode of dress, speech, or lifestyle." M.R.E. 412(d); *see, e.g., United States v. Erikson*, 76 M.J. 231, 235 n.2 (C.A.A.F. 2017) (questioning "whether M.R.E. 412 actually applies in this case," where the defense sought to admit evidence of the victim's prior accusation of sexual assault against another soldier, and noting, "We fail to see how the sexual assault of a victim relates to that victim's 'sexual behavior' or 'sexual predisposition' ").

---

[6] Appellant stated, "At that time we're talking about different preferences. He relates to me that he and his girlfriend—[interrupted by question from Defense Counsel]."

Additionally, we reject the AFCCA's conclusion that evidence CP consented to the uncharged conduct was impermissible sexual propensity evidence. According to the AFCCA, "[t]he inference . . . was clear: CP consented to the conduct in Appellant's hotel room because he was either gay or bisexual." *Washington*, 2021 CCA LEXIS 379, at *98, 2021 WL 3239903 at *34. However, "sexual predisposition" as defined by the rule does not apply to evidence that "directly refer[s] to sexual activities or thoughts." M.R.E. 412(d). Because evidence CP consented to specific uncharged acts leading up to the charged conduct "directly refer[s] to sexual activities or thoughts," it is not evidence of his sexual predisposition.

We do not suggest that uncharged conduct that is intrinsic to the charged offense could *never* constitute impermissible sexual propensity evidence. For example, in *Stephens v. Miller*, an appellant charged with attempted rape claimed he and the victim engaged in consensual sex. 13 F.3d 998, 1000 (7th Cir. 1994) (en banc). He sought to introduce his statements to the victim during the charged offense, " '[d]on't you like it like this? . . . Tim Hall said you did,' " as well as something to the effect of "switching partners," to bolster his account that the sex was initially consensual, but his statements were so offensive that she asked him to leave. *Id.* at 1000-01 (alterations in original). The state trial judge excluded the statements under Indiana's rape shield statute. *Id.* at 1000. In an appeal from the denial of his federal habeas corpus petition, a plurality of the United States Court of Appeals for the Seventh Circuit rejected the appellant's argument that his statements were intrinsic to the alleged offense, noting that "criminal defendants could always circumvent rape shield statutes by claiming that they said something near in time and place to the alleged rape." *Id.* at 1003.

However, such concerns are not present where, as here, the statement at issue does not qualify as sexual predisposition. Unlike the statements in *Stephens* pertaining to the victim's preferred sexual positions, the statement made by CP that men and women have flirted

with him does not pertain to the behavior of the victim. It merely describes the behavior of others who flirted with him.

The Government's failure to object to the statements referencing CP's relationship with his girlfriend and his statement regarding men and women having flirted with him in the past supports the conclusion they did not state or imply improper sexual predisposition or sexual orientation evidence because it suggests the Government did not view them as implicating M.R.E. 412. Only the SVC objected—an objection that was withdrawn after the defense disavowed any intention to introduce M.R.E. 412 material. Under the circumstances, we hold that the statements do not qualify as sexual predisposition evidence under M.R.E. 412(a)(2).

Finally, we note that even if Appellant's testimony implicated M.R.E. 412, the Government's proactive introduction of evidence concerning CP's heterosexuality opened the door to Appellant's introduction of contrary evidence. On direct examination, CP testified that he told Appellant, "I'm not into you. I'm not into that or anything like that." "This Court has not. . . . prevent[ed] evidence of homosexuality from being used *against* an accused. And we see no principled reason to prevent an accused from using this same type of evidence to potential advantage . . . ." *United States v. Collier*, 67 M.J. 347, 355 (C.A.A.F. 2009). Lower military courts have reached the same conclusion, noting "[w]here the Government uses sexual orientation in a way that implies the impossibility of consent . . . the defense must be allowed to rebut that inference. To do otherwise denies the appellant his right to mount a defense." *United States v. Villanueva*, No. NMCCA 201400212, 2015 CCA LEXIS 90, at *9, 2015 WL 1305782, at *3 (N-M. Ct. Crim. App. Mar. 19, 2015) (unpublished).

Here, the military judge faulted the defense for failing to object to evidence of CP's heterosexuality, but this neglects the context. The defense's argument was always that this evidence was res gestae evidence of consent, not M.R.E. 412 evidence. Therefore, the defense had no reason

to object to evidence that they planned on eliciting in some manner later in the trial. In fact, objecting to the Government's testimony would have provided grounds for the Government to prohibit Appellant from testifying to these facts. The defense could not have anticipated that the military judge would insist on an interpretation of M.R.E. 412 that neither the Government nor the defense adopted or argued.

Despite the defense's efforts to adapt its strategy to the military judge's ruling classifying Appellant's testimony as M.R.E. 412 evidence, the ruling was not applied equally to both parties. The military judge struck Appellant's testimony about CP's relationship, but he denied Appellant's motion to strike CP's testimony about the same relationship. The military judge's disparate application of M.R.E. 412 was error and an abuse of discretion.

### C. The military judge's remedy

M.R.E. 301(e) provides that a witness who has waived the right against self-incrimination "may be required to answer questions relevant to the disclosure." M.R.E. 301(e)(1) grants military judges the discretion to strike a witness's direct examination testimony if the witness invokes the right against self-incrimination during cross-examination. An appellant's Sixth Amendment rights can be violated where "a military judge's application of the rule infringes upon a weighty interest of the accused and is arbitrary or disproportionate to the purposes the rule is designed to serve." *United States v. Maebane*, 86 M.J. 173, 179 (C.A.A.F. 2025) (citation modified); *see also Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987).

The military judge's decision to strike Appellant's testimony was an abuse of discretion. When Appellant refused to submit to cross-examination in a closed M.R.E. 412 session, the military judge crafted a remedy that applied to both the uncharged conduct and Appellant's testimony about CP's statements which the military judge concluded implicated CP's sexual orientation. The remedy was overbroad for two reasons. First, no party had objected

to the uncharged conduct evidence. And second, with respect to CP's statements, the military judge had previously ruled that the existence of CP's relationship with his girlfriend was admissible. Accordingly, even assuming that some of the evidence was covered by M.R.E. 412, a proportionate remedy would cover only the supposed sexual orientation testimony.[7] Here, the military judge rejected less serious remedies for a perceived violation of M.R.E. 412 and opted for a drastic remedy. Such was not a reasonable choice within the range of options arising from the facts and law, and it was "disproportionate to the purposes [the rule is] designed to serve." *Maebane*, 86 M.J. at 179 (alteration in original) (internal quotation marks omitted) (citation omitted). Therefore, the military judge's remedy was an abuse of discretion.

The military judge's ruling also violated Appellant's Sixth Amendment right to testify in his own defense and present a complete defense by eliminating Appellant's ability to argue mistake of fact as to consent.[8] In cases of constitutional error, the government "must show that the error was harmless beyond a reasonable doubt to obviate a finding of prejudice." *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019). The military judge's ruling struck crucial testimony for the panel to evaluate the credibility of CP and Appellant and thereby make a determination about consent. This conclusion is supported by the record, which reflects the panel's attempt to reconcile the instruction with the evidence.

---

[7] To be clear, Appellant never specifically testified to the victim's "preferences." Defense counsel cut Appellant off before he could speak to the "preferences," and the remainder of Appellant's direct examination did not probe the contents of his conversation with CP.

[8] As noted above, one panel member asked, "So we're supposed to disregard that it was consensual or just disregard the portion of sexual orientation?" The military judge responded, "Both."

At least two members of the panel had questions about the military judge's instructions that showed they were grappling with the issue over a male-on-male alleged sexual offense where Appellant's version of events implied there was consent to some touching. Under these circumstances, where Appellant's core defense to the charged acts came down to a credibility contest between the victim and the accused, striking Appellant's testimony severely impacted his ability to present a complete defense. It also materially affected the panel's ability to assess credibility, thereby prejudicing Appellant. As such, the Government cannot prove the error was harmless beyond a reasonable doubt. The conviction must be set aside.

## V. Judgment

The decision of the United States Air Force Court of Criminal Appeals is set aside as to Charge I and its specification and the sentence. The finding of guilty with respect to Charge I and its specification is set aside. We affirm the lower court with respect to all other findings. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. That court may either dismiss Charge I and its specification and reassess the sentence, or it may order a rehearing. Thereafter, Article 67, UCMJ, 10 U.S.C. § 867 (2024), will apply.

Judge MAGGS, dissenting.

Appellant testified in his own defense against a charge of abusive sexual contact. Some of Appellant's testimony touched upon the victim's past interactions with other men and women. Because of this testimony, a concern arose about trial counsel's prospective cross-examination of Appellant. The concern was that Appellant's answers to some cross-examination questions might be inadmissible under Military Rule of Evidence (M.R.E.) 412(a) (2019 ed.), which generally makes evidence of an alleged victim's "other sexual behavior" and "sexual predisposition" inadmissible.

To determine whether Appellant's answers to cross-examination questions would or would not fall within the scope of M.R.E. 412(a), the military judge ordered a closed hearing.[1] At this hearing, the military judge stated that he could accept a proffer from counsel as to what they thought Appellant's answers would be. As an alternative, he stated that he could allow trial counsel to question Appellant in the closed hearing to determine what Appellant's answers would be. Defense counsel did not make a proffer and further insisted that Appellant could not be compelled to testify in the closed hearing. In response, the military judge struck some of the testimony that Appellant had provided on direct examination and instructed the members to disregard it.

The sole granted issue is "[w]hether the original military judge abused his discretion when he struck a portion of Appellant's testimony." The Government makes two arguments for concluding that the military judge did not abuse his discretion. First, the Government contends that the stricken testimony on direct examination was itself within the scope of M.R.E. 412 and was therefore inadmissible. The Court rejects this argument, and I do not address it here. Second, the Government asserts that the military judge properly struck Appellant's testimony because

---

[1] The closed hearing transcript was sealed pursuant to M.R.E. 412(c)(2) and Rule for Courts-Martial (R.C.M.) 1113. The transcript remains sealed and any discussion of sealed material in this opinion is limited to that which is necessary for the analysis. *See* R.C.M. 1113.

Appellant refused to testify at the closed hearing and thus blocked the Government from cross-examining him about his direct examination testimony. Unlike the Court, I am persuaded by this second argument.

In my view, as explained more fully below, the military judge acted properly under *Brown v. United States*, 356 U.S. 148 (1958), and M.R.E. 301(e)(1). In *Brown*, the Supreme Court held that a witness's privilege against self-incrimination does not permit the witness to refuse to answer questions about matters that he or she has put into dispute in direct testimony. *Brown*, 356 U.S. at 155-56. M.R.E. 301(e)(1) implements *Brown* by providing: "If a witness asserts the privilege against self-incrimination on cross-examination, the military judge . . . may strike the direct testimony of the witness in whole or in part." Based on these authorities, I would affirm the judgment of the United States Air Force Court of Criminal Appeals (AFCCA).[2] Because the Court reaches a different conclusion, I respectfully dissent.

## I. Background

The specification of Charge I accused Appellant of abusive sexual contact in violation of Article 120(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(d) (2012), by touching C.P.'s genitals through his clothing without his consent. Testifying in his own defense, Appellant stated that he had engaged in some consensual physical contact with C.P., but he denied that he had touched C.P.'s genitals. At one point in his testimony, Appellant stated that C.P. had "talked about, [how] he had had men and women come on to him before." Following this statement, trial counsel notified the military judge that he "intend[ed] to

---

[2] The AFCCA rendered its final judgment, affirming the findings and the sentence, as reassessed, in *United States v. Washington*, No. ACM 39761 (reh), 2024 CCA LEXIS 342, at *85, 2024 WL 3886239, at *31 (A.F. Ct. Crim. App. Aug. 20, 2024) (unpublished). The AFCCA earlier addressed the striking of Appellant's testimony in *United States v. Washington* (*Washington I*), No. ACM 39761, 2021 CCA LEXIS 379, at *72-105, 2021 WL 3239903, at *24-36 (A.F. Ct. Crim. App. July 30, 2021) (unpublished).

ask questions that would delve into M.R.E. 412 territory on cross-examination" with regard to C.P. "based on [Appellant]'s testimony so far." After Appellant's direct examination ended, the military judge ordered a closed hearing to discuss M.R.E. 412.

At the closed hearing, trial counsel told the military judge that in cross-examining Appellant, he "intend[ed] to ask questions of the witness of the specifics told to him by [C.P.] during this period of time." The military judge asked trial counsel to make a proffer of Appellant's testimony but trial counsel told the military judge that he could not make a proffer because he had not interviewed Appellant and did not know what he would say. The military judge did not specifically ask defense counsel to make a proffer and defense did not make a proffer. The military judge decided that he could not rule on whether Appellant's testimony in response to cross-examination questions would be inadmissible under M.R.E. 412 without knowing what Appellant might say.

In response, the military judge decided that "the most appropriate way to address [the issue] is to simply [have trial counsel ask Appellant questions] here in the [M.R.E.] 412 session." Appellant, however, was unwilling to submit to examination at the closed hearing. Defense counsel asserted that the Government "can never compel the accused to do so." Although defense counsel did not specifically cite the Fifth Amendment privilege against self-incrimination, both parties and the military judge appear to have understood that defense counsel was relying on this right. Indeed, before this Court, Appellant maintains that he had a "right to remain silent at the [M.R.E.] 412 hearing because he did not testify at that hearing."

The military judge discussed the matter with counsel at length. In so doing, the military judge emphasized four points. First, the military judge recognized that Appellant should not be able to present evidence supporting a defense theory without the Government being able to challenge the evidence. Second, the military judge acknowledged the Government's need for "further examination of M.R.E. 412 matters on this issue" before cross-examining Appellant, which could have been accomplished had Appellant not

refused to testify at the closed hearing. Third, speaking to both trial counsel and defense counsel, the military judge said that "one thing I could do is I could certainly accept a proffer from counsel as to what you think the answers are going to be and let you explore that." Fourth, the military judge asserted that "the accused holds the keys" to solving this problem.

Trial counsel ultimately argued that the military judge should strike portions of Appellant's testimony on direct examination because Appellant was unwilling to submit to questioning at the closed hearing. Trial counsel stated:

> [I]f the accused is not willing to subject himself to cross-examination, that might tend to impeach his credibility as to his conclusion that it was a consensual encounter. Then, we believe that the matters concerning his conclusion that it was a consensual encounter, [and] all matters about that conclusion, must be stricken.

The military judge agreed with this argument and subsequently gave the following instruction to the members:

> Members of the court, you heard testimony from the accused that he believed the contact between himself and [C.P.] occurring prior to the charged conduct alleged in the Specification of Charge I, was consensual in nature and may have implicated [C.P.]'s sexual orientation. You are to disregard this portion of the accused's testimony. However, you must consider testimony by the accused wherein he denied the specific allegations, the specific charged conduct alleged in the Specification of Charge I.

On appeal to the AFCCA, two judges concluded that the military judge had not abused his discretion in striking Appellant's testimony. *Washington I*, 2021 CCA LEXIS 379, at *105, 2021 WL 3239903, at *36. One judge dissented, reasoning in part that the military judge should only have "stricken those portions of Appellant's testimony related to [C.P.]'s sexual predisposition." *Id.* at *139, 2021 WL 3239903, at *48 (Meginley, J., concurring in part, dissenting in part, and dissenting in the result in part).

## II. Discussion

As mentioned previously, the Supreme Court addressed the problem of a witness testifying on direct examination and then asserting the Fifth Amendment privilege against self-incrimination in *Brown*. 356 U.S. at 155-56. The Supreme Court held that a witness "cannot reasonably claim that the Fifth Amendment gives him not only [the choice not to testify] but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute." *Id.* The Supreme Court reasoned: "The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." *Id.* at 156. In *Brown*, the Supreme Court therefore decided that a trial judge properly held a witness in contempt for refusing to testify on cross-examination. *Id.* at 157. The Court also indicated that striking the witness's testimony on direct examination would be a possible remedy. *Id.* at 156 n.5.

Federal courts following *Brown* generally have concluded that an accused who testifies on direct examination waives the right to assert the privilege against self-incrimination on cross-examination but that "the waiver extends only to matters 'reasonably related' to the accused's testimony on direct examination." 28 *Wright & Miller's Federal Practice & Procedure* § 6166 (2d ed. 2025); *accord* 1 *McCormick on Evidence* § 129 (9th ed. 2025) ("[A] defendant who testifies should have no right to invoke the privilege regarding cross-examination questions that the trial court . . . determines are necessary to provide the prosecution with a reasonable opportunity to test the defendant's assertions on direct."). Federal courts further agree that under *Brown* a trial judge has discretion to strike the relevant parts of the defendant's direct testimony if the defendant cannot be cross-examined because he refused to testify on cross-examination. 28 *Wright & Miller's Federal Practice & Procedure* § 6166.

M.R.E. 301(e)(1) implements *Brown* by stating: "If a witness asserts the privilege against self-incrimination on cross-examination, the military judge, upon motion, may

strike the direct testimony of the witness in whole or in part, unless the matters to which the witness refuses to testify are purely collateral."

The Government argues on the basis of *Brown* that the Fifth Amendment privilege against self-incrimination did not afford Appellant a right to refuse to answer questions concerning matters with which he had testified on direct examination. The Government further argues on the basis of both M.R.E. 301(e)(1) and federal court precedent that the military judge acted well within his discretion in striking some of Appellant's testimony.

I am persuaded by the Government's argument. Appellant's assertion of his privilege against self-incrimination after his testimony on direct examination prevented the military judge from making a ruling under M.R.E. 412 and thus prevented the Government from cross-examining him. Importantly, the military judge never made an M.R.E. 412 ruling because Appellant refused to comply with the mandated procedures of M.R.E. 412. The military judge found "that what the defense has described as facts and circumstances surrounding the charged offense, . . . constituted M.R.E. 412 matters that *needed to be appropriately address[ed] in an M.R.E. 412 hearing*." (Emphasis added.) The purpose of the M.R.E. 412 hearing was to ensure "that the matters [could] be fully explored, so that the [military judge could] determine whether an exception to M.R.E. 412 applies." But because those mandated procedures could not be executed and the Government therefore could not cross-examine Appellant, the military judge found striking those portions of Appellant's testimony the only other option.

If the military judge had not stricken Appellant's testimony on direct examination, Appellant would have accomplished exactly what the Supreme Court said was impermissible: "withdraw[ing] from the cross-fire of interrogation before the reliability of his testimony ha[d] been fully tested" and thus "putting before the trier of fact a one-sided account of the matters in dispute." *Brown*, 356 U.S. at 155. I therefore would hold that the military judge did not abuse his discretion in this case.

Appellant makes several counter arguments to this conclusion. His primary contention is that he did not actually assert the privilege against self-incrimination "on cross-examination" as both *Brown* and M.R.E. 301(e)(1) contemplate. Rather, he asserted the privilege only at the closed hearing. He emphasizes that he "did not refuse to be cross-examined in open court."

I am unpersuaded by this argument. I see no basis for concluding that when *Brown* and M.R.E. 301(e)(1) use the phrase "on cross-examination," the phrase means only "when seated in the witness chair and being asked cross-examination questions." If that is all that "on cross-examination" means, then a witness could always escape the application of the principle in *Brown*. The witness, who offered testimony under direct examination, could simply refuse to take the stand for cross-examination and refuse to submit to any cross-examination questions. This interpretation, accordingly, would render *Brown* a "dead letter," and is therefore not reasonable. *United States v. Castleman*, 572 U.S. 157, 178 (2014) (Scalia, J., concurring in part and in the judgment) (internal quotation marks omitted) (quoting *United States v. Hayes*, 555 U.S. 415, 427 (2009)). It is also inconsistent with federal practice. *E.g.*, *United States v. Mikhel*, 889 F.3d 1003, 1040 (9th Cir. 2018) (striking the testimony of a witness who "testified on direct for three days but refused to be cross-examined. . . . and . . . refused to appear in court thereafter").

I understand the phrase "on cross-examination" in *Brown* and in M.R.E. 301(e)(1) not to mean the actual asking of questions of the witness on the witness stand but instead to mean the "period after direct examination" when cross-examination takes place. This temporal meaning is evident in *Brown* itself. The Supreme Court, for example, spoke of how the trial court directed the witness "to answer pertinent questions *on cross-examination*," 356 U.S. at 152 (emphasis added), meaning that she was required to answer questions during the period for cross-examination.

So understood, Appellant's argument that he did not assert the privilege against self-incrimination on cross-examination is incorrect. Appellant asserted his privilege against self-incrimination during the period after his direct

examination when the Government had a right to cross-examine him. And because his assertion of the privilege thwarted the Government's expressed desire to cross-examine him, striking his testimony was a permissible sanction under both *Brown* and M.R.E. 301(e)(1).

Appellant also argues that requiring him to testify at the M.R.E. 412 hearing was unnecessary because trial counsel could have made a proffer of his expected testimony. He states: "Trial counsel could easily have done this because [Appellant] had already testified on direct and established the relevance and admissibility of the *res gestae*." But this argument is contradicted by trial counsel's statement that he could not make a proffer because he had never interviewed Appellant and did not know what Appellant might say. The military judge, in my view, did not abuse his discretion in accepting trial counsel's position.

Appellant argues in addition that his testimony at the closed hearing was not necessary because "trial counsel need[ed] only [to] establish the relevance and admissibility of the subjects of questioning he wishe[d] to pursue in order to satisfy [M.R.E.] 412." But this statement is not fully correct. A military judge must determine whether the evidence is within the ambit of M.R.E. 412(a), whether it fits within an exception under M.R.E. 412(b), and whether its probative value outweighs the danger of unfair prejudice to the victim's privacy. M.R.E. 412(c)(3). The military judge further must issue an order that "specifies evidence that may be offered." *Id.* The military judge acted well within his discretion in deciding that he could not do that without having either a proffer or Appellant's testimony.

A final concern is that even if the military judge could strike some of Appellant's testimony, the scope of the instruction to the members may have been excessive. As noted above, one judge at the AFCCA expressed this view. Having considered the record carefully, I am persuaded that the military judge did not abuse his discretion in determining what to strike. M.R.E. 301(e)(1) provides that "the military judge . . . may strike the direct testimony of the witness in whole or in part." In every case, the military judge will have to decide how much to strike. This decision will depend on a prediction of the testimony cross-

examination would likely produce. The military judge's prediction that the cross-examination would have addressed Appellant's testimony that "he believed the contact between himself and [C.P.] . . . was consensual in nature and may have implicated [C.P.]'s sexual orientation" was not unreasonable. Indeed, to this day, we have no way of knowing what Appellant would have said. The military judge therefore did not abuse his discretion.

## III. Conclusion

For these reasons, I would affirm the judgment of the United States Air Force Court of Criminal Appeals.